SCHOTT, Judge.
Plaintiffs, Henry and Juanita Holmes, have appealed from a dismissal of their suit pursuant to a jury verdict. The case arose out of an automobile accident which occurred on January 22, 1980, on the Industrial Canal Bridge at St. Claude Avenue in New Orleans. The automobile owned and driven by Henry and occupied by his wife, Juanita, had come to a stop in traffic on the bridge when it was very lightly struck in the rear by a pick up truck operated by defendant, Elbert Lewis, owned by defendant, Marsh Buggies, Inc., and insured by defendant, Holland America Insurance Company. Liability was stipulated by the defendants, and the case was submitted to the jury on the interrogatory: “Do you find that the negligence of the defendant, Elbert Lewis, was the proximate cause of the injuries sustained by the plaintiff, Juanita Holmes?” The jury answered “No”. The only issue is whether the jury committed manifest error in reaching its verdict.
Henry Holmes testified as follows: He got out of his vehicle to inspect for damage, and, by coincidence, an ambulance of the New Orleans Police Department came to the scene. He was friendly with the emergency technicians and had worked as a paramedic with one of them for several years. His wife said she felt nauseated and dizzy and had neck pain and a headache so he asked the technicians to check her and he told his wife she should be taken to the hospital. In the past he had made three separate claims from automobile accidents and settled them all out of court.
Juanita Holmes testified as follows: The impact of the accident was a “forceful crash” and caused her head to be thrown backward, forward, and backward against the headrest. When the paramedic approached her she was nauseated and dizzy and was taken to Charity Hospital in the ambulance. The emergency room physician who examined her said she would be sore, prescribed pain medication (Tylenol) and heat applications, and sent her home. At home she took hot baths and tylenol and stayed in bed. Three days later she went to her regular physician, Dr. Harold Shel *30 by, a general physician and gastroenterologist. She complained about her neck, low back and leg, and he prescribed medication. She did not return to him for these problems, although she did see him the following month for stomach and bowel problems. Instead, on January 29, she went to Dr. Stuart Phillips, an orthopedist, with complaints of pain in her neck, arm, lower back and leg. He prescribed Demerol, a home traction kit, heat treatment, and bed rest. She used a cervical collar which she had from a previous accident, but she did not take the medicine because it irritated her stomach. Her low back pain subsided after a relatively short period of time, but her neck pain continued even to the time of the trial in June, 1982, when she continued to have flareups. She denied having any pain prior to the accident except for some neck pain which had resulted from an accident five years previously and which cleared up in two months. She had already been nervous when riding in automobiles as a result of this previous accident as well as one she was involved in many years previously but now she was more nervous when riding. She had settled a claim arising out of her last accident.
The report from Charity Hospital concerning Mrs. Holmes’ emergency visit following the accident states that she was complaining of headache and "vague” pain in the left lumbar area; that she “feels ‘tired’ across her back.” But the report flatly states “No neck pain.” The recorded impression is mild muscle strain with the patient ambulatory and in good condition. The diagnosis was mild muscle strain and tension headache.
Dr. Shelby testified as follows: He had treated Mrs. Holmes as a patient three times between November, 1977 and November, 1979, for an ulcer and a bowel problem. She came to him on January 25, 1980, complaining of some pain in her head and neck. He found spasm in the neck muscles and prescribed medication and heat treatments. She did not return to him until November with complaints of abdominal, neck and arm pain. He found no objective symptoms and nothing organically wrong with her on this visit or on subsequent visits she made in January, 1981, and one week prior to trial. However, he thought her symptoms were produced by psychological anxiety from the accident.
Dr. Phillips testified as follows: When he first examined Mrs. Holmes on January 29, 1980, he found tightness in her neck and limitation of motion in her back. He diagnosed cervical strain and ruptured lumbar disc. He prescribed medication and bed rest. When she returned on February 5, he discontinued the bed rest prescription. When she returned on February 21, he felt she was well enough to return to work. When she returned on May 26, she still had cervical spasm but the lumbar examination was negative. He thought she had a chronic cervical strain. When she returned on August 5, she still had spasm and limited motion in the neck. By September 16 she was getting better but still had intermittent symptoms and by December 2 she was still complaining of pain. Throughout this period she was on medication and home traction to relieve cervical spasm. When she returned on January 13, 1981, she was much better and on March 10, 1981, he discharged her although she continued with occasional pain. He examined her one week before trial and found that she still had tightness and spasm. He thought her neck injury was the result of the accident and that she was left with a five per cent impairment of body function.
Dr. James H. Brown, a psychiatrist, examined Mrs. Holmes and, on the basis of what she said, concluded that she had an anxiety state for which she “should receive psychotherapy.
Defendants had Mrs. Holmes examined by two physicians, Dr. Robert L. Apple-baum, a neurosurgeon, who examined her on July 9, 1980, and Dr. Hyman Soboloff, an orthopedist, who examined her on May 8, 1981.
Dr. Applebaum testified as follows: On examination he found a normal range of motion in her neck, but tightness, stiffness, and spasm in the muscles which he attrib *31 uted to arthritis. X-ray studies revealed “more advanced [arthritic] changes than others” in her age (50) group which explains why she had intermittent neck pain and spasm. It is probable that she would have had these problems if the accident had not occurred.
Dr. Soboloff testified as follows: When he saw her in May, 1981, she had a full range of motion and no tightness or spasm. He took X-rays and compared them to Dr. Applebaum’s taken in July, 1980, and Dr. Phillips’ taken in January, 1980, and he found that there were no changes. He concluded that she had pre-existing arthritis which fully explained her periodic complaints of pain and stiff neck.
Plaintiffs contend that the jury erred manifestly in failing to compensate them for damages related to Mrs, Holmes’ back, neck, and anxiety state. They argue that she was well before the accident and has suffered since the accident so that they carried their burden of proof. However, in the final analysis, her proof depends almost entirely upon acceptance of her own testimony as credible.
Beginning with her neck problem which was by far the most serious, she testified that her neck began to hurt right after the accident, and her husband testified that she said so at the time. Yet the Charity Hospital report states no neck pain. When confronted by this she said the report was erroneous. In order to recover ground lost from this circumstance she called as a rebuttal witnesses the hospital record clerk who testified that Mrs. Holmes had, indeed, complained about her neck. However, it developed that this clerk had known Mrs. Holmes for thirteen years and could not explain why the doctor recorded no neck pain.
When Dr. Phillips’ diagnosis of chronic cervical strain is analyzed it depends for its accuracy on the truthfulness of Mrs. Holmes that she just began to suffer after the accident and the assumption that her muscle spasm was a post accident development. However, Drs. Applebaum and So-boloff were of the firm opinion that someone with such arthritis as Mrs. Holmes had, probably had these symptoms before the accident.
As to the psychological injury, Mrs. Holmes said she was nervous about riding in cars before the accident but was more so afterwards. The psychiatrist’s opinion that she suffered some anxiety state from the accident was based entirely on what she told him. Therefore, her claim was based entirely on her own credibility.
Finally, there was never any objective symptom of lumbar disability. Dr. Phillips found none and the Charity Hospital report speaks of “vague” pain and how she “feels ‘tired’ across her back,” again nothing objective.
In totally rejecting her claim the jury had to conclude that Mrs. Holmes had neck problems before this accident and attempted to place the blame for them on defendants. They may have concluded that any psychological difficulty she had was there before the accident or they may have concluded that she concocted this psychological difficulty as well as the back pain, or they may have believed that she hurt her back before the accident and tried to pin the responsibility on defendants. In any event, the jury saw and heard the Holmes and disbelieved them. It is not the function of an appellate court to substitute its own credibility determination for the jury’s. Williams v. Allstate Ins. Co., 367 So.2d 1318 (La.App. 4th Cir.1979).
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.